# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

TENARIS BAY CITY, INC., MAVERICK TUBE CORPORATION, IPSCO TUBULARS INC., TENARIS GLOBAL SERVICES (U.S.A.) CORP., SIDERCA SAIC.,
*Plaintiffs-Appellants*

v.

UNITED STATES, UNITED STATES STEEL CORPORATION, BORUSAN MANNESMANN PIPE U.S. INC., PTC LIBERTY TUBULARS LLC, UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, WELDED TUBE USA INC.,
*Defendants-Appellees*

Appeal from the U.S. Court of International Trade
Case No. 1:22-cv-00343-CRK
Hon. Judge Claire R. Kelly

NONCONFIDENTIAL RESPONSE BRIEF OF DEFENDANTS-APPELLEES UNITED STATES STEEL CORPORATION, BORUSAN MANNESMANN PIPE U.S. INC., PTC LIBERTY TUBULARS LLC, UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, WELDED TUBE USA INC.

Thomas M. Beline
Myles S. Getlan
James E. Ransdell
CASSIDY LEVY KENT (USA) LLP
900 19th Street NW
Suite 400
Washington, DC 20006

*Counsel to United States Steel
Corporation*

Roger B. Schagrin
Christopher T. Cloutier
Nicholas C. Phillips*
SCHAGRIN ASSOCIATES
900 Seventh Street, NW,
Suite 500
Washington, DC 20001

*Counsel to Borusan Mannesmann
Pipe U.S. Inc.; PTC Liberty
Tubulars LLC; United Steel,
Paper and Forestry, Rubber,
Manufacturing, Energy, Allied
Industrial and Service Workers
International Union, AFL-CIO,
CLC; and Welded Tube USA Inc.*

*Only admitted in New York. Practice
limited to federal courts and agencies.

May 5, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2025-1382

**Short Case Caption** Tenaris Bay City, Inc. et al. v. United States

**Filing Party/Entity** United States Steel Corporation; Borusan Mannesmann Pipe U.S. Inc.; PTC Liberty Tubulars LLC; United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial And Service Workers International Union, AFL-CIO, CLC; Welded Tube USA Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/05/2025

Signature: /s/ Christopher T. Cloutier

Name: Christopher T. Cloutier

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Borusan Mannesmann Pipe U.S. Inc. | | Borusan Mannesmann Boru Sanayi ve Ticaret A.Ş. of Turkey is the 100% owner of Borusan Mannesmann Pipe U.S., Inc. |
| PTC Liberty Tubulars LLC | | N/A |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC | | N/A |
| Welded Tube USA Inc. | | N/A |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Benjamin J. Bay, formerly of Schagrin Associates | Michelle R. Avrutin, formerly of Schagrin Associates | |
| Joseph A. Laroski, Jr., formerly of Schagrin Associates | Justin M. Neuman | |
| Kelsey M. Rule, formerly of Schagrin Associates | Alessandra A. Palazzolo | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 25-1382 |
| **Short Case Caption** | Tenaris Bay City, Inc. et al. v. United States |
| **Filing Party/Entity** | United States Steel Corporation |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/05/2025

Signature: /s/ Thomas M. Beline

Name: Thomas M. Beline

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. <br><br> ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. <br><br> ☑ None/Not Applicable |
| United States Steel Corporation | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

Pursuant to Federal Circuit Rules 25.1(d) and 25.1(e)(1)(B), this brief contains confidential material that has been removed from single brackets on pages 8, 11-14, 20-22, 38-39, 42-43, and 45. The name of the industry source for OCTG shipment data was omitted from pages 8, 11, 12, 14, 20, 21, 22, 38, 39, 42, and 45. Information contained in this source was omitted from pages 11, 39, 42, and 43. Identities of certain OCTG producers and their relationship to the Petitions was omitted from pages 12 and 13. Production totals of specific producers were omitted from page 13. Defendants-Appellees requested and received business proprietary treatment for this information in the underlying proceeding, which is subject to limited disclosure only to authorized persons under an administrative protective order in accordance with 19 U.S.C. § 1677f(c)(1).

STATEMENT OF RELATED CASES……………………………………………1

STATEMENT OF THE ISSUES……………………………………………2

STATEMENT OF THE CASE……………………………………………2

   I.   Legal Framework for Initiation……..…………………………4

   II.   The Petitions' Calculation of Industry Support………………7

   III.   Commerce's Initiation of the Investigations………………13

   IV.   The CIT's Remand….……………………………………16

   V.   Commerce's Remand Redetermination……………………17

   VI.   The CIT Sustains the Remand Redetermination………………20

SUMMARY OF ARGUMENT……………………………………………23

ARGUMENT……………………………………………………………...25

   I.   Standard of Review….……………………………………25

      A.   Commerce's Determinations………………………25

B.      The CIT's Determinations Concerning the Construction of its Own Remand Order and Exhaustion.……..………..29

II.     Commerce's Industry Support Determination Is Supported by Substantial Evidence and in Accordance with Law.…..….……30

        A.      Tenaris Misapprehends Commerce's Role...…...……....31

        B.      Commerce Reasonably Determined that the Petitions' Shipment Data Were Reliable……………………………37

        C.      Commerce Reasonably Considered, and Rejected, the Inference of Double Counting…………………………...…..47

III.    Commerce Complied with the CIT's Remand Order…………59

IV.     Tenaris Failed to Exhaust its Remaining Arguments...………62

CONCLUSION…………………………………………………...65

# TABLE OF AUTHORITIES

Cases

*Advanced Software Design Corp. v. Fiserv Inc.*,
    641 F.3d 1556 (Fed. Cir. 2011)......................................................29

*Agro Dutch Indus. Ltd. v. United States*,
    508 F.3d 1024 (Fed. Cir. 2007)......................................................30

*Amado v. Microsoft Corp.*,
    517 F.3d 1353 (Fed. Cir. 2008)............................................... 29, 59

*Apex Frozen Foods Priv. Ltd. v. United States*,
    862 F.3d 1322 (Fed. Cir. 2017)......................................................30

*Atl. Sugar, Ltd., v. United States*,
    744 F.2d 1556 (Fed. Cir. 1984)......................................................29

*Cleo Inc. v. United States*,
    501 F.3d 1291 (Fed. Cir. 2007)......................................................28

*Coalition of American Flange Producers v. United States*,
    448 F. Supp. 3d 1340 (Ct. Int'l Trade 2020)..............................35

*Consol. Bearings Co. v. United States*,
    348 F.3d 997 (Fed. Cir. 2003)........................................................62

*Consolidated Edison Co. v. NLRB*,
    305 U.S. 197 (1938)........................................................................25

*Consolo v. Federal Maritime Comm'n*,
    383 U.S. 607 (1966)........................................................................51

*Cornetta v. United States*,
    851 F.2d 1327 (Fed. Cir. 1988)......................................................64

*Corus Staal BV v. United States*,

502 F.3d 1370 (Fed. Cir. 2007) .................................................................42

*Daewoo Elecs. Co. v. United States*,

  6 F.3d 1511 (Fed. Cir. 1993) ..............................................................27

*Downhole Pipe & Equipment LP v. United States*,

  887 F. Supp. 2d 1311 (Ct. Int'l Trade 2012)....................................34

*Golden Bridge Tech, Inc. v. Nokia, Inc.*,

  527 F.3d 1318 (Fed. Cir. 2008) ..............................................32, 45, 58

*Goldlink Indus. Co. v. United States*,

  431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006)....................................28

*INS v. Elias-Zacarias*,

  502 U.S. 478 (1992) ..............................................................................28

*Indus. Chemicals, Inc. v. United States*,

  941 F.3d 1368 (Fed. Cir. 2019) ..........................................................32

*Koyo Seiko Co. v. United States*,

  36 F.3d 1565 (Fed. Cir. 1994) ............................................................27

*Luoyang Bearing Corp. v. United States*,

  347 F. Supp. 2d 1326 (Ct. Int'l Trade 2004)....................................63

*Maine Potato Council v. United States*,

  613 F. Supp. 1237 (Ct. Int'l Trade 1985) ........................................35

*Matsushita Elec. Indus. Co. v. United States*,

  750 F.2d 927 (Fed. Cir. 1984) ..............................................25, 26, 27, 51

*Metso Mins. Inc. v. Terex Corp*,

  594 F. App'x 649 1556 (Fed. Cir. 2014) ............................................29

*Minebea Co. v. United States*, 782 F. Supp. 117 (Ct. Int'l. Trade 1992),

  *aff'd*, 984 F.2d 1178 (Fed. Cir. 1993) ................................................34

*Mitsubishi Heavy Indus., Ltd. v. United States*,

    275 F.3d 1056 (Fed. Cir. 2001) ........................................................26

*Navneet Education Ltd. v. United States*,

    2023 WL 9018387 (Ct. Int'l Trade 2023) .....................................63

*Negev Phosphates, Ltd. v. United States*,

    699 F. Supp. 938 (Ct. Int'l Trade 1988)........................................50

*Nippon Steel Corp. v. United States*,

    458 F.3d 1345, 1352 (Fed. Cir. 2006)....................................... 28, 41

*NSK Ltd. v. United States*,

    190 F.3d 1321 (Fed. Cir. 2003) ........................................................46

*NSK Ltd. v. United States*,

    346 F. Supp. 2d 1312 (2004), *aff'd*, 481 F.3d 1355 (Fed. Cir. 2007) .....27

*PT Pindo Deli Pulp v. United States*,

    825 F. Supp. 2d 1310, (Ct. Int'l Trade 2012)...................................... 34, 57

*Qingdao Taifa Group Co. v. United States*,

    710 F. Supp. 2d 1352 (Ct. Int'l Trade 2010).............................................36

*QVD Food Co., Ltd. v. United States*,

    658 F.3d 1318 (Fed. Cir. 2011) .......................................................34

*Shandong Rongxin Imp. & Exp. Co. v. United States*,

    203 F. Supp. 3d 1327 (Ct. Int'l Trade 2017).............................................28

*Suramerica de Aleaciones Laminadas, C.A. v. United States*,

    44 F.3d 978 (Fed. Cir. 1994) ........................................................25

*Ta Chen Stainless Steel Pipe, Inc. v. United States*,

    298 F.3d 1330 (Fed. Cir. 2002) ......................................................27

*Tenaris Bay City, Inc. et al. v. United States*,

693 F. Supp. 3d 1314 (Ct. Int'l Trade 2024) ("*Tenaris I*")............... passim

*Tenaris Bay City, Inc. et al. v. United States,*

745 F. Supp. 3d 1336 (Ct. Int'l Trade 2024) ("*Tenaris II*") ............ passim

*Tianjin Machinery Import & Export Corp v. United States,*

806 F. Supp. 1008 (Ct. Int'l Trade 1992) ....................................36

*Timken v. United States,*

240 F. Supp. 2d 1228 (Ct. Int'l Trade 2002).............................46

*Travelers Indem. Co. v Bailey,*

577 U.S. 137 (2009) ...............................................................30

*United States Steel Group v. United States,*

96 F.3d 1352 (Fed. Cir. 1996) ....................................... 26, 50

*United States v. Eurodif S.A.,*

555 U.S. 305 (2009)................................................................27

*Usinor Sacilor v. United States,*

893 F. Supp. 1112 (Ct. Int'l Trade 1995) ...................................50

*Wanxiang Am. Corp. v. United States,*

12 F.4th 1369, 1373 (Fed. Cir. 2021) ........................................32

## Statutes and Regulations

19 C.F.R. § 351.203(e)(1) ...............................................................5

19 C.F.R. § 351.203(e)(3) ...............................................................9

19 U.S.C. § 1516a(b)(1)(B)(i) .......................................................25

19 U.S.C. § 1673a(c)(1)(A)............................................ 4, 32, 33, 34

19 U.S.C. § 1673a(c)(1)(A)(i)................................................ 32, 33

19 U.S.C. § 1673a(c)(1)(A)(ii)........................................................33

19 U.S.C. § 1673a(c)(4)(B)....................................................... 5, 9, 11

19 U.S.C. § 1673a(c)(4)(D)..................................................................5, 42

19 U.S.C. §§ 1671a(b)(1) and 1673a(b)(1)...................................................4, 39

19 U.S.C. §§ 1671a(c)(4)(A), 1673a(c)(4)(A) ...............................................5, 7

19 U.S.C. §§ 1671a(c)(4)(B) and 1673a(c)(4)(B) ......................................5, 11

19 U.S.C. §§ 1671a(c)(4)(D), 1673a(c)(4)(D) .....................................................5

19 U.S.C. §§ 1671a(c)(4)(E), 1673a(c)(4)(E) .....................................................6

19 U.S.C. §§ 1677(4) .........................................................................................58

Administrative Determinations

*Mattresses from Indonesia: Initiation of Countervailing Duty
Investigation*,
88 Fed. Reg. 57,412 (Dep't Commerce Aug. 18, 2023)............................38

Notice of Implementation of Section 129 of the Uruguay Round
Agreements Act; Antidumping Measures Concerning Oil Country
Tubular Goods from Argentina, 71 Fed. Reg. 19,873 (Dep't Commerce
Apr. 18, 2006) ..................................................................................38

*Oil Country Tubular Goods from Argentina, Mexico, and the Russian
Federation*,
86 Fed. Reg. 60,205 (Dep't Commerce Nov. 1, 2021) ..............................13

*Oil Country Tubular Goods from Argentina, Mexico, and the Russian
Federation*,
87 Fed. Reg. 70,785 (Dep't Commerce Nov. 21, 2022)............................15

*Oil Country Tubular Goods From Argentina: Final Affirmative
Determination of Sales at Less Than Fair Value and Final Negative
Determination of Critical Circumstances*, 87 Fed. Reg. 59,054 (Sept.
29, 2022) ...........................................................................................3

**Other Authorities**

Statement of Administrative Action Accompanying the Uruguay Round
    Agreements Act, H.R. Rep. No. 103-316, vol. 1, *reprinted in* 1994
    U.S.C.C.A.N. 4040 (1994) ................................................................6

Defendants-Appellees United States Steel Corporation, Borusan Mannesmann Pipe U.S. Inc., PTC Liberty Tubulars LLC, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, and Welded Tube USA Inc. (collectively, "Defendants-Appellees") respectfully submit this brief in response to the opening brief filed on March 24, 2025 by Plaintiffs-Appellants Tenaris Bay City, Inc., Maverick Tube Corporation, IPSCO Tubulars Inc., Tenaris Global Services (U.S.A.) Corp., Siderca S.A.I.C. (collectively, "Tenaris") ("Pl. Br.") in its appeal of the decision by the U.S. Court of International Trade (the "CIT") in *Tenaris Bay City, Inc. et al. v. United States*, CIT Court No. 22-00343.

## STATEMENT OF RELATED CASES

In accordance with Rule 47.5 of the Rules of this Court, counsel for Defendants-Appellees make the following statements:

1.     No other appeal in or from the same civil action or proceeding in the lower court or body was previously before this Court or any other appellate court.

2.     No other action pending before this Court or any other court may be directly affected by the Court's disposition on this appeal.

## STATEMENT OF THE ISSUES

1.      Was Commerce's determination that Defendants-Appellees' petition for an antidumping investigation on oil country tubular goods from Argentina established sufficient support from the domestic industry based on substantial evidence and otherwise in accordance with law?

2.      Did the CIT abuse its discretion in interpreting its own remand order and determining that Commerce's remand redetermination complied with that remand order?

3.      Did the CIT abuse its discretion in determining that Tenaris failed to exhaust its administrative remedies regarding certain arguments concerning Commerce's industry support determination?

4.      Has Tenaris introduced further new arguments in its opening brief before this Court that were not timely raised before the CIT?

## STATEMENT OF THE CASE

This appeal arises from the U.S. Department of Commerce's ("Commerce") initiation of an antidumping ("AD") investigation into oil country tubular goods ("OCTG") from Argentina, which resulted in a final determination published as *Oil Country Tubular Goods From Argentina:*

*Final Affirmative Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances*, 87 Fed. Reg. 59,054 (Sept. 29, 2022), Appx082. Tenaris contested the initiation of the investigation and claimed that Defendants-Appellees had not demonstrated that the petition was filed on or behalf of the domestic industry. In *Tenaris Bay City, Inc. v. United States*, 693 F. Supp. 3d 1314 (Ct. Int'l Trade 2024) (*"Tenaris I"*), the CIT sustained Commerce's determination in part and remanded in part for further explanation or reconsideration of whether Commerce double-counted finishing operations of OCTG for purposes of calculating industry support for the petition. Commerce issued its *Final Results of Redetermination Pursuant to Court Remand* (June 26, 2024) ("Remand Redetermination"), Appx021, which found that the administrative record did not establish any such double counting in Commerce's industry support calculation and which the CIT sustained in *Tenaris Bay City, Inc. v. United States*, 745 F. Supp. 3d 1336 (Ct. Int'l Trade 2024) (*"Tenaris II"*). Tenaris now appeals this decision. An overview of the legal framework for the initiation of an antidumping investigation and a procedural history of the case are set forth below.

# I.    Legal Framework for Initiation

19 U.S.C. §§ 1671a(b)(1) and 1673a(b)(1) provide that Commerce shall initiate an investigation following the submission of a petition filed on behalf of the domestic industry "which alleges the elements necessary for the imposition of the duty…and which is accompanied by information reasonably available to the petitioner supporting those allegations." The petition may be amended "as the administering authority and the Commission may permit." The statute further provides, at §§ 1671a(c)(1)(A) and 1673a(c)(1)(A), that Commerce can, with limited exceptions, take up to 20 days to make two distinct determinations. Specifically, Commerce shall—

(i)     after examining, on the basis of sources readily available to the administering authority, the accuracy and adequacy of the evidence provided in the petition, determine whether the petition alleges the elements necessary for the imposition of a duty…and contains information reasonably available to the petitioner supporting the allegations, and

(ii)    determine if the petition has been filed by or on behalf of the industry.

Tenaris' appeal has limited its challenge to the determination required by prong (ii).

A petition is filed on behalf of the industry if the domestic producers and workers who support the petition (1) account for at least 25 percent of the total production of the domestic like product and (2) account for more than 50 percent of the production of the domestic like product produced by that portion of the industry expressing an opinion on the petition. 19 U.S.C. §§ 1671a(c)(4)(A), 1673a(c)(4)(A). To assess this, Commerce may either "poll the industry or rely on other information to determine industry support." 19 U.S.C. §§ 1671a(c)(4)(D), 1673a(c)(4)(D). Commerce may disregard the positions of domestic producers that are related to foreign producers or that import the subject merchandise. 19 U.S.C. §§ 1671a(c)(4)(B), 1673a(c)(4)(B). Further, Commerce's regulations provide that "{w}here a party to the proceeding establishes that production data for the relevant period, as specified by the Secretary, is unavailable, production levels may be established by reference to alternative data that the Secretary determines to be indicative of production levels." 19 C.F.R. § 351.203(e)(1). During the period before initiation, parties may submit comments or information on the issue of industry support – but after initiation, "the determination

regarding industry support shall not be reconsidered." 19 U.S.C. §§ 1671a(c)(4)(E), 1673a(c)(4)(E).

The Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103-316, vol. 1, *reprinted in* 1994 U.S.C.C.A.N. 4040 (1994) (the "SAA") makes clear that this statutory framework is meant to "minimize the burden on U.S. industry" by providing that "the question of industry support…be resolved conclusively at the outset of a proceeding" – *i.e.*, with limited exceptions, within the 20-day period after Commerce receives the petition. SAA at 862-63. Arguments concerning industry support not made in this pre-initiation phase are therefore waived. *See* 19 U.S.C. §§ 1671a(c)(4)(E), 1673a(c)(4)(E); SAA at 863 ("Arguments regarding industry support should not be made to either Commerce or the Commission following initiation"); *Tenaris II*, 745 F. Supp. 3d at 1342 n.6, Appx013 ("The time in which a party must exhaust its arguments with respect to industry support calculations, is the 20-day window which Congress has provided for Commerce to make its industry support determination.").

## II. The Petitions' Calculation of Industry Support

On October 6, 2021, Defendants-Appellees – a group of four domestic OCTG producers and a union representing U.S. workers at domestic OCTG facilities[1] – filed petitions for the imposition of antidumping and countervailing duties on imports of OCTG from various countries, including Argentina. *See* Petitions for the Imposition of Antidumping and Countervailing Duties: Oil Country Tubular Goods from Argentina, Mexico, the Republic of Korea, and Russia" (Oct. 6, 2021) (the "Petitions") at Volume I, Appx218. Petitioners included information demonstrating that the petition was filed by or on behalf of the domestic industry.

The Petitions contained calculations of industry support pursuant to 19 U.S.C. §§ 1671a(c)(4)(A) and 1673a(c)(4)(A) based on information reasonably available to the Petitioners for the most recently completed calendar year, 2020. Because information on *total* domestic OCTG production was not then reasonably available, Petitioners followed

---

[1] Although Tenaris repeatedly characterizes itself as the "largest U.S. OCTG producer," *see* Pl. Br. at 6, 9, 31, its own failure to place production data on the administrative record renders those assertions lacking in evidentiary support.

Commerce's practice in a long line of cases in which domestic shipment information is accepted as a proxy for unavailable data on domestic production in the industry support calculations. *Id.* at 5-6, Appx239-240. Accordingly, Defendants-Appellees submitted data on domestic shipments of OCTG in 2020 from [         Industry Source         ], an industry source that is the recognized authority on the U.S. market for pipe and tubes (including OCTG). *Id.* at 6 and Exhibit I-2, Appx240, 289. These domestic shipment data served as a reliable starting point for a reasonably accurate estimate of total domestic OCTG production, *i.e.*, the denominator in Commerce's industry support calculation. Petitioners then excluded amounts for any domestic producer that neither supported nor opposed the petition.

Defendants-Appellees took a conservative approach in calculating industry support. For example, to ensure that all domestic production of OCTG was accounted for, the domestic shipment volumes were adjusted to include estimated export shipments based on the export experience of Defendants-Appellees during the relevant period. *Id.* at 6, Appx240. Further, the calculation did not include domestic production at non-petitioning mills with workers represented by the petitioning union,

under the assumption that management at those mills would oppose the petition. *Id.* at 7, Appx241; *see also* 19 C.F.R. § 351.203(e)(3). Defendants-Appellees also noted that Tenaris's domestic production should be disregarded in the event it opposed the petition because it imports the subject merchandise and is related to foreign producers of the subject merchandise, a conflict anticipated in 19 U.S.C. § 1673a(c)(4)(B). *See* Petitions, Volume I at 8-9, Appx242-43. On this basis, Defendants-Appellees asserted that supporters of the petition accounted for over 50 percent of total domestic OCTG production by that portion of the industry expressing an opinion. *Id.* at 7 and Exhibit I-3, Appx241, Appx292.

Defendants-Appellees subsequently addressed comments submitted by Tenaris and amended the Petitions in response to questionnaires issued by Commerce. In its comments, Tenaris critiqued the industry support calculation on grounds substantively different from what it argues in the instant appeal. Tenaris initially claimed that the industry support calculation was insufficient because Tenaris itself should have been included in the calculation and because production volumes in 2020, the most recently completed calendar year, were an inappropriate basis for determining industry support due to a global oil

oversupply, the impacts of COVID-19, and high steel input prices in that year. *See* Tenaris Letter (Oct. 8, 2021), Appx1054. Tenaris also argued that the industry support calculation could possibly include "mere" finishing operations for imported green tube, which Tenaris asserted should not be considered domestic production. *See* Tenaris Comments on Petitioners' Standing (Oct. 15, 2021) ("Tenaris Oct. 15 Comments") at 9, Appx1450. On this basis, Tenaris argued that Commerce should either reject the Petitions or poll the industry to determine industry support. *See* Tenaris Oct. 15 Comments at 5-9, Appx1446-50.

Defendants-Appellees addressed Tenaris's comments. Defendants-Appellees showed that concerns about inclusion of finishing operations were baseless because the industry as a whole and the U.S. International Trade Commission ("ITC") have long recognized that green tube processors (*e.g.*, processors that finish untreated "green" pipe into OCTG) engage in sufficient production-related activities to be considered part of the domestic OCTG industry. *See* Response to Tenaris Submission Concerning Petitioners' Standing (Oct. 18, 2021), at 6-8 and Attachment 6, Appx1637-39, Appx1698. Defendants-Appellees furthermore demonstrated that market conditions in 2020 did not undermine

calculations based on the best available data for the most recent calendar year, and provided examples of Commerce rejecting claims like those of Tenaris that some period of time other than the most recent calendar year should be used to analyze industry support. *Id.* at 9 n.21, Appx1640. Finally, Defendants-Appellees established that Tenaris favors foreign production and that its position on industry support should be disregarded under 19 U.S.C. §§ 1671a(c)(4)(B) and 1673a(c)(4)(B). *Id.* at 11-12, Appx1642-43.

Meanwhile, in response to Commerce's question regarding the completeness of the industry source used to calculate domestic production, Defendants-Appellees provided information on [ Industry Source

] showing that the source is the largest market intelligence database on steel pipe and tube in the world and the premier resource for pipe and tube statistics. *See* Petitioners' Response to General Issues Questionnaire (Oct. 12, 2021) at 5-8 and Exhibit 8, Appx1093-96, Appx1159. Defendants-Appellees further demonstrated that shipments are an acceptable proxy for production in this case because the difference between shipments and production in the three most recent calendar years [         Ratio between volumes         ]. *Id.* at 3-4, Appx1091-92.

Defendants-Appellees made certain amendments to the Petitions in response to Commerce's questions. As amended, the Petitions relied on an industry support calculation with a numerator based on domestic OCTG production by those supporting the petition (*i.e.*, Borusan Mannesmann Pipe U.S. Inc. ("Borusan"), PTC Liberty Tubulars LLC ("PTC Liberty"), United States Steel Corporation, Welded Tube USA Inc., Wheatland Tube Company, and [ Producer Name ]) and a denominator based on an estimate of total domestic OCTG production using domestic shipment data published in [ Industry Source ] and [ Industry support calculation methodology ] regarding the Petitions [ Producer Names ]. *See* Petitioners' Response to Second General Issues Questionnaire (Oct. 21, 2021) at Exhibit 5, Appx1736. The result of this calculation methodology showed that the Petitions satisfied the statutory 50 percent industry support requirement. *Id.* In fact, after making amendments in response to Commerce's questions, the level of support was an even [ Characterization of industry support ] than the industry support calculations in the originally-filed Petitions.

## III.   Commerce's Initiation of the Investigation

On October 26, 2021, Commerce initiated the investigation within its 20-day statutory deadline. *See Oil Country Tubular Goods from Argentina, Mexico, and the Russian Federation*, 86 Fed. Reg. 60,205 (Dep't Commerce Nov. 1, 2021), Appx114. Commerce accepted the Petitioners' revised calculations showing that supporters of the Petitions accounted for [ Number ] percent of domestic production, with a numerator representing the actual OCTG production by those supporting the Petitions (i.e., [ Production volume ]) and a denominator representing an estimate of total domestic OCTG production by the industry as a whole [                    Industry support calculation methodology                    ] (*i.e.*, [ Production volume ]). *See* Commerce Initiation Checklist (Oct. 26, 2021) ("Initiation Checklist"), Attachment II at 4-8 and n.53, Appx132-36. Commerce also devised a more conservative, alternative calculation methodology that replaced the export ratio derived from Defendant-Appellees' actual operations with an industry-wide ratio derived from the most recent ITC publication on the U.S. OCTG industry, yielding [ Characterization of ratio ] estimate of total domestic OCTG production in the denominator (*i.e.*, [ Production volume ]). *Id.* at 7, 8 n.53, Appx135-36. Commerce's

alternative methodology nonetheless showed that supporters of the Petitions accounted for [ Number ] percent of domestic production. *Id.*

Under either method, the Petitions satisfied the statutory 50 percent industry support requirement. Commerce noted that Tenaris did not submit any evidence or argument to impugn the [       Industry Source

       ] domestic shipment data that were used as the basis for the denominator in the industry support calculations. *Id.* at 15, Appx143. Nor did Tenaris provide any production data such that Commerce might adjust the calculations to reflect its opposition to the Petitions. *Id.* at 7 n.48, Appx135. Commerce also explained that the calculations were conservative because the denominator assumed that all non-petitioning domestic producers opposed the Petitions, despite the fact that the petitioning union represented workers at non-petitioner facilities and only Tenaris formally opposed the Petition. *Id.* at n.53 and 21, Appx136, Appx149. Commerce noted that even if Tenaris and all domestic producers that had not yet made their position clear to Commerce opposed the Petitions, there would still be sufficient support under the statute. *Id.* at 7, Appx135. Put differently, even when assuming and

overstating the maximum possible level of opposition, the Petitions satisfied the statutory 50 percent industry support requirement.

Commerce also addressed Tenaris's remaining arguments. The agency observed that the ITC has included finishing operations within domestic production of OCTG in numerous prior proceedings, contradicting Tenaris's protestations about support from domestic entities that might "merely" finish OCTG. *Id.* at 14, Appx142. Commerce also rejected Tenaris's argument that the 2020 time period was so anomalous that Commerce should jettison its "longstanding practice of measuring production over the most recently completed calendar year," noting that Tenaris failed to provide any of its own data to support its claims that a different time period would be more appropriate. *Id.* at 16, Appx144.

Accordingly, Commerce initiated the investigation that later resulted in an affirmative determination of sales made at less-than-fair value and the imposition of antidumping duties on OCTG imports from Argentina. *See Oil Country Tubular Goods from Argentina, Mexico, and the Russian Federation*, 87 Fed. Reg. 70,785 (Dep't Commerce Nov. 21, 2022).

## IV. The CIT's Remand

Tenaris appealed Commerce's industry support finding and concomitant decision to initiate the investigation. On appeal, the CIT rejected most of Tenaris's challenges to Commerce's finding that supporters of the Petitions accounted for more than 50 percent of domestic OCTG production in 2020 by that portion of the industry expressing an opinion on the petition. Specifically, the CIT held that Commerce reasonably found that there were no exceptional circumstances that warranted an extension of the pre-initiation period by an additional 20 days. *See Tenaris I*, 693 F. Supp. 3d at 1324-25, Appx066-67. The CIT also held that Commerce acted within its discretion under the statute when it decided not to poll the industry and instead rely on other information regarding the OCTG market in 2020 to determine industry support for the Petitions. *Id.* at 1320-24, Appx060-64.

Having sustained Commerce's overall approach, however, the CIT concluded that the agency "fail{ed} to address record evidence indicating that certain domestic companies both produce and finish OCTG, leading to the inference that some domestic pipe may have been double counted

16

in the industry support calculations." *Tenaris I,* 693 F. Supp. 3d at 1326, Appx070.[2] The CIT noted that "Commerce may have reasons to reject this inference; however, it must acknowledge consideration of such evidence and explain why it nonetheless rejects the inference." *Id.* at 1327, Appx071. "Accordingly, the Court remands determination on the double counting issue to Commerce for further explanation or reconsideration." *Id.* at 1328, Appx073. The CIT did not raise or discuss any other issue for remand.

## V.    Commerce's Remand Redetermination

After reexamining all filings submitted to the record during the 20-day pre-initiation period, Commerce released its draft redetermination, which affirmed and further explained its original conclusion that Defendants-Appellees provided reasonably available industry support data that accurately reflected domestic OCTG production in 2020. *See* Draft Results of Redetermination Pursuant to Court Remand (May 28,

---

[2] "Double counting" in theory refers to OCTG that is counted once when the pipe is manufactured by a domestic producer and then counted again when the pipe is finished by a different domestic processor.

2024), Appx1963. The parties submitted comments in support of and opposition to the draft redetermination.

After considering the parties' comments, Commerce issued its Remand Redetermination and maintained its position that the initiation of the investigation was supported by substantial evidence and in accordance with law. Commerce began its analysis by noting that Tenaris had not raised any concerns with "double counting" that distorted the level of industry support in the calculation in any of its four pre-initiation filings to the agency, and therefore failed to exhaust its administrative remedies on the issue. Remand Redetermination at 5, Appx025. Nonetheless, Commerce addressed the issue. It explained that because the domestic like product includes OCTG, whether finished or unfinished, the inclusion of data for both production and finishing operations in both the numerator and denominator of the calculation was needed to account for total U.S. production. *Id.* at 12-13, Appx032-33. The inclusion of all green tube production and all finishing in the denominator maximized its size, necessarily resulting in a more conservative industry support calculation. *Id.* at 13-14, Appx033-34.

Commerce provided a mathematical formula describing its understanding:

> We provide the following mathematical examples of this approach, where A = supporters' OCTG production, B = supporters' green tube processing, C = all other U.S. producers' OCTG production, and D = all other U.S. producers' green tube processing: (A + B) / (A + B + C + D). The supporters' green tube processing in the numerator and denominator effectively cancels each other out, resulting in the following equation: (A) / (A + C + D). If green tube processing is not included in either the numerator or the denominator, the equation is as follows: (A) / (A + C). As evident in a comparison of the mathematical equations, the inclusion of green tube processing yields a result where the supporters account for a smaller overall share of total U.S. production than they would if green tube processing were not included in the calculation. The calculation Commerce relied on for its initiation decision thus fairly accounts for the supporters' share of total U.S. production.

*Id.* at 14 n.57, Appx034.

Commerce found no record evidence indicating that any of the domestic companies in the numerator double counted their OCTG, but addressed Tenaris's specific claim that pipe from Borusan and PTC Liberty *could* have been double counted. *Id.* at 14, Appx034. Commerce examined the record evidence submitted by Tenaris, consisting of screenshots of the companies' websites. It determined that PTC Liberty is "first and foremost" a producer of OCTG with processing capabilities

typical for a U.S. pipe mill and found no evidence that PTC Liberty processes green tube from other producers, while Borusan's processing facility processes imported green tube rather than domestically produced green tube from another U.S. producer. *Id.* at 15-16, Appx035-36. Commerce therefore determined that "Tenaris USA's concerns about 'double counting' are misplaced." *Id.* at 12, Appx032.

Finally, Commerce addressed additional arguments made by Tenaris, including that the [        Industry Source        ] data were incomplete. Commerce found that Tenaris had failed to submit any evidence or argument to detract from "this well-established industry source" or propose an alternative source, and that "the record supports Commerce's conclusion that the shipment data from this source account for all domestic shipments of the domestic like product." *Id*. Commerce found Tenaris's remaining arguments to be unpersuasive or otherwise outside the scope of the remand. *Id.* at 18-25, Appx038-45.

## VI.   The CIT Sustains the Remand Redetermination

The parties submitted comments on Commerce's Remand Redetermination. Tenaris's comments – in addition to reprising its arguments that Commerce failed to address the possibility of double

counting and that the [ Industry Source ] data were incomplete –
raised yet more new arguments. *See* Comments of Plaintiffs Tenaris Bay
City Inc. et al. on Commerce's Final Remand Determination (July 26,
2024), Appx2055. In particular, Tenaris attempted to use its generalized
statement before the agency that "{t}he relationship of pipe formation
and pipe finishing has implications for any assessment of a domestic
OCTG industry" as a platform to debut more specific arguments before
the CIT that (1) Commerce may have <u>undercounted</u> total production in
the denominator by comingling producers and processors and (2)
Commerce may have <u>overcounted</u> such production by including
threading, a form of processing that does not count as OCTG production.
*See id.* at 4, 10, Appx2062, Appx2068.

Having considered Commerce's Remand Redetermination and the
parties' comments, the CIT sustained the Remand Redetermination in
full. The CIT first found that Tenaris "cannot now rely on the word
'implications' to fashion more specific arguments about potential
undercounting or…threading operations," ruling that Tenaris had failed
to exhaust its administrative remedies and waived these arguments.
*Tenaris II*, 745 F. Supp. 3d at 1342-43, Appx015. And although Tenaris

had previously questioned the completeness of the [ Industry Source ] data, the CIT pointed out that it had already upheld Commerce's use of those data as reasonable, finding that "Commerce was not required to use perfect data so long as it explains why its choice was reasonable on the record, which it did." *Id.* at 1342, Appx014. Commerce had determined that the record supported the reliability of the [ Industry Source ] data and Tenaris never proposed any alternative estimates of production data, despite carrying the burden to build the record. *Id.* at 1342, 1344, Appx 013-14, Appx019.

Next, the CIT addressed Tenaris's argument that Commerce did not comply with the remand instructions from *Tenaris I* by failing to ensure that production data had not been double counted and by failing to "assess the accuracy and completeness of the data more generally." *Id.* at 1344, Appx019. The CIT determined that Commerce had in fact complied with its remand, and that "the Court did not order Commerce to confirm the completeness or the accuracy of the shipment data." *Id.* at 1345, Appx020. On the basis of Commerce's thorough review of the record and analysis of the double counting issue, the CIT held that "Commerce's

industry support determination is reasonable, supported by substantial evidence, and therefore sustained." *Id*. Tenaris now appeals this ruling.

## SUMMARY OF ARGUMENT

Throughout this proceeding, beginning with Commerce's pre-initiation analysis of the Petitions and continuing through the instant appeal, Tenaris has unsuccessfully searched for a winning argument that could undo Commerce's well-supported and carefully reasoned determination that the Petitions met the required threshold of industry support. This search has forced Tenaris to repeatedly debut new arguments at each stage of the proceeding and, often, to reverse positions it has previously taken. This appeal is no exception. Accordingly, the following arguments – which Tenaris either failed to raise before Commerce or failed to raise before the CIT – are now waived: (1) Commerce was required to mount its own independent and highly exacting investigation into the industry support evidence; (2) the 2018-19 data that Commerce used to adjust the 2020 shipment data was underinclusive; (3) Commerce's aggregation of producer and processor data violated the antidumping statute by failing to give meaning to the terms "industry" and "production"; (4) the 2020 shipment data

undercounted domestic production; and (5) the 2020 shipment data improperly comingled producer and processor data.

Tenaris's remaining arguments fail and amount to an impermissible attempt to have this Court re-weigh evidence that Commerce thoroughly considered. First, Tenaris claims that the 2020 shipment data were inaccurate because they excluded processor volumes. However, as Commerce already demonstrated and Defendants-Appellees confirm, Tenaris's claim is baseless and turns on a basic misreading of the evidence. Second, Tenaris claims that there was insufficient record evidence for Commerce to conclude that production data was not double-counted in the industry support calculation. In fact, Tenaris had *never* provided any record evidence that double counting had ever occurred, instead relying on speculative inferences that Commerce comprehensively reviewed and rejected. Finally, Tenaris argues that the CIT improperly interpreted its own remand order, and that Commerce did not comply with it by failing to undertake a comprehensive review of the industry support data. But Commerce's Remand Redetermination was nothing if not comprehensive, and the CIT remanded solely for reconsideration of whether data in the industry support calculation had

been double counted. Tenaris has therefore failed to disturb Commerce's Remand Redetermination, which was supported by substantial evidence and in accordance with law. This Court should affirm it.

## ARGUMENT

## I. Standard of Review

### A. Commerce's Determinations

The standard of review applicable to Commerce's determinations requires that the Court uphold an agency determination as lawful unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In evaluating Commerce's determination, the Court must decide whether "the administrative record contain{s} substantial evidence to support" Commerce's decision and whether that decision was "rational." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984).

A plaintiff must do more than simply point to contradictory evidence in the record to overturn the agency's decision. "{T}he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Id.* (internal quotations and citations omitted). To the extent, therefore, that a plaintiff claims the evidence before Commerce "could be open to multiple interpretations, its argument does not require, or even allow, reversal." *Mitsubishi Heavy Indus., Ltd. v. United States*, 275 F.3d 1056, 1062 (Fed. Cir. 2001) (citing *Matsushita*, 750 F.2d at 933).

In addition, a plaintiff may not ask the Court to re-weigh the evidence and decide the case for Commerce. *See Matsushita*, 750 F.2d at 933. The role of the Court is not to question the agency's decisions about the weight or quality of the evidence. *See United States Steel Grp. v. United States*, 96 F.3d 1352, 1357 (Fed. Cir. 1996) (it is the agency's task to evaluate and assign weight to the evidence); *see also Matsushita*, 750 F.2d at 933 (it is not the weight of the evidence, but whether it reasonably supports a rational decision, that is evaluated by a reviewing court). The

Court may not substitute its judgment or its interpretation of the evidence for that of the agency. *See Matsushita*, 750 F.2d at 936.

Given Commerce's special expertise in applying the antidumping law, this Court has repeatedly held that Commerce is the "master" of the antidumping law, entitling its decisions to great deference. *See NSK Ltd. v. United States*, 28 CIT 1535, 1561, 346 F. Supp. 2d 1312, 1335 (2004), *aff'd*, 481 F.3d 1355 (Fed. Cir. 2007) (citations omitted). The U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") has also noted that Commerce's "special expertise in administering the anti-dumping law entitles its decisions to deference from the courts." *Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1335 (Fed. Cir. 2002) (citations omitted); *see also Koyo Seiko Co. v. United States*, 36 F.3d 1565, 1570 (Fed. Cir. 1994) ("Deference to an agency's statutory interpretation is at its peak in the case of a court's review of Commerce's interpretation of the antidumping laws.") (citing *Daewoo Elecs. Co. v. United States*, 6 F.3d 1511, 1516 (Fed. Cir. 1993)). In addition, the Supreme Court has held that where the agency is applying the antidumping statute, "we ask only whether the department's application was reasonable." *United States v. Eurodif S.A.*, 555 U.S. 305, 319 (2009).

Indeed, when Congress entrusts an agency to administer a statute that demands inherently fact-intensive inquiries, agency conclusions may be set aside only if the record is "so compelling that no reasonable factfinder" could reach the same conclusion. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *Shandong Rongxin Imp. & Exp. Co. v. United States*, 203 F. Supp. 3d 1327, 1338 (Ct. Int'l Trade 2017) (recognizing tremendous deference to Commerce's factual findings). It is thus improper to overturn a determination "simply because the reviewing court would have reached a different conclusion based on the same record," *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007) (citations omitted). The Court will not substitute its judgment for Commerce in choosing between two fairly conflicting views, even if it could justifiably have made a different choice had the matter been before it *de novo. Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006). Hence, a party challenging Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal," *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation omitted), and the Court sustains Commerce's factual determinations if they are reasonable

and supported by the record as a whole, even if evidence detracts from them. *See Atl. Sugar, Ltd., v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

### B. The CIT's Determinations Concerning the Construction of its Own Remand Order and Exhaustion

Tenaris asserts that all issues it presents on appeal are susceptible to *de novo* review. Pl. Br. at 20-21. This is incorrect. First, regarding Tenaris' challenge to the CIT's interpretation of its own remand order, this Court has held that "{a} district court's interpretation of its order is entitled to deference unless the interpretation is unreasonable or is otherwise an abuse of discretion." *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1358 (Fed. Cir. 2008).[3] This Court has also recognized that the foregoing standard is common to other Circuit Courts of Appeal. *See, e.g.*, *id.* (citing Eleventh and Seventh Circuit precedent); *Advanced Software Design Corp. v. Fiserv, Inc.*, 641 F.3d 1368, 1381 (Fed. Cir. 2011) ("the district court's interpretation of its own orders is reviewable only for abuse of discretion") (citing Fourth Circuit precedent); *Metso Mins. Inc.*

---

[3] Although *Amado* was a patent appeal, the analysis that occasioned the above quote applied in-circuit law.

*v. Terex Corp.*, 594 F. App'x 649, 652 (Fed. Cir. 2014) ("The interpretation of its own orders is within the sound discretion of the district court") (citing Second Circuit precedent) (Unpublished Opinion); *cf. also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("Numerous Courts of Appeals have held that a bankruptcy court's interpretation of its own confirmation order is entitled to substantial deference") (collecting cases).

Second, as concerns Tenaris' challenge to the CIT's findings that Tenaris failed to exhaust its administrative remedies, because "the application of exhaustion principles in trade cases is subject to the discretion of the judge of the Court of International Trade," *Agro Dutch Indus. Ltd. v. United States*, 508 F.3d 1024, 1029 (Fed. Cir. 2007), this Court "review{s} the CIT's failure to exhaust determination for an abuse of discretion," A*pex Frozen Foods Priv. Ltd. v. United States*, 862 F.3d 1322, 1332 (Fed. Cir. 2017).

## II. Commerce's Industry Support Determination Is Supported by Substantial Evidence and in Accordance with Law

Tenaris's attack on Commerce's industry support determination boils down to two basic claims about the evidence that Commerce considered. First, Tenaris alleges that the shipment data that formed the

basis for Commerce's calculation of total domestic OCTG production did not reflect all such production. *See* Pl. Br. at 23, 34, 39. Second, Tenaris alleges that because the Petitions did not disaggregate data between purportedly distinct producers and processors, Commerce could not assess whether it had double-counted pipe that may have been formed by one U.S. producer and subsequently processed by a different U.S. processor. *See id.* at 25, 32, 41. From these alleged evidentiary failures, Tenaris reverse-engineers various violations of the antidumping statute, relying on dictionary definitions and Microsoft Word's bold and italics functions instead of relevant case law. In fact, Tenaris's claims are meritless, and amount to an attempt to have this Court re-weigh evidence that Commerce thoroughly considered. Because this Court may not do so, and because Tenaris's substantive claims regarding the evidence Commerce considered are inaccurate, Commerce's industry support determination must be upheld.

## A. Tenaris Misapprehends Commerce's Role

Tenaris begins its re-weighing exercise by attempting to invent an original, and highly exacting, standard under which Commerce is obligated to make industry support determinations. By applying the

dictionary – and no other authority – to 19 U.S.C. § 1673a(c)(1)(A)(i),

Tenaris asserts that Commerce was required to

> "investigate the nature or condition" of the information in the petition and "to scrutinize" that information to ensure that such information was "precise" and "conforming exactly with the truth or with a given standard" and that it was "free from error" so that Commerce could "fully satisfy" itself that the information required to determine the industry support thresholds for the petition were "quite sufficient, suitable, or acceptable in quality or quantity."

Pl. Br. at 23. From a procedural standpoint, this argument must fail because both the argument and any citation to subsection 1673a(c)(1)(A) are missing from Tenaris's CIT opening brief, reply brief, and post-remand comments. As this Court has held, "new arguments will not be decided in the first instance on appeal," *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1323 (Fed. Cir. 2008); *see also, e.g.*, *Indus. Chemicals, Inc. v. United States*, 941 F.3d 1368, 1373 n.3 (Fed. Cir. 2019) (applying above to CIT); *Wanxiang Am. Corp. v. United States*, 12 F.4th 1369, 1373 (Fed. Cir. 2021) (same). This Court must hold Tenaris to the same standard.

Tenaris also misses the mark by deriving the supposed "examination" obligation from the wrong subsection of Section 1673a. The subsection Tenaris relies upon addresses whether the petition

"alleges the elements necessary for the imposition of {an antidumping} duty" and contains "reasonably available" supporting information. 19 U.S.C. § 1673a(c)(1)(A)(i). But it is the following subsection that governs the determination now presented on appeal and omits the clause in question. *Id.* § 1673a(c)(1)(A)(ii). Congress could have placed the clause in the chapeau of Section 1673a(c)(1)(A) to cover both subsections, but did not. Ordinary canons of statutory interpretation compel the conclusion that the clause has no bearing on Commerce's industry support determination.

Setting these threshold issues aside, Tenaris' proposed framework is inapposite. From its dictionary exercise, Tenaris concludes that Commerce was required to mount its own independent investigation into Defendant-Appellees' record evidence on industry support and exclude evidence that is not "precise" or does not "conform{} exactly with the truth." *See* Pl. Br. at 25, 26.

That is not the law. Perfection is not the standard that Commerce is required to meet when assessing industry support. "The fact that the industry data is not perfect is not sufficient to suggest that Petitioners do not have industry standing. Industry standing calculations are not

33

meant to be exact and proxies are routinely used to estimate the amount of U.S. production of a particular product." *PT Pindo Deli Pulp v. United States*, 825 F. Supp. 2d 1310, 1327-28 (Ct. Int'l Trade 2012). This flows from the fact that petitions are only required to contain "information reasonably available to the petitioner supporting the allegations." 19 U.S.C. § 1673a(c)(1)(A). Far from being beholden to Tenaris's rigid requirements, both the CIT and the CAFC have found that Commerce "has broad discretion in reaching its decision" with regard to initiation. *Downhole Pipe & Equipment LP v. United States*, 887 F. Supp. 2d 1311, 1319 (Ct. Int'l Trade 2012) (quoting *Minebea Co. v. United States*, 782 F. Supp. 117, 119 (Ct. Int'l. Trade 1992), *aff'd*, 984 F.2d 1178 (Fed. Cir. 1993)).

Further, Tenaris's view is at odds with the axiomatic principle that it is the burden of the parties, and not Commerce, to create the record that Commerce in turn examines to make its determinations. *See QVD Food Co., Ltd. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) ("Although Commerce has authority to place documents in the administrative record that it deems relevant, the burden of creating an adequate record lies with interested parties and not with Commerce.")

(internal quotation and brackets removed). Rather, Commerce's role as fact-finder is to "make reasonable interpretations of the evidence and to determine the overall significance of any particular factor or piece of evidence." *Coalition of American Flange Producers v. United States*, 448 F. Supp. 3d 1340 (Ct. Int'l Trade 2020) (citing *Maine Potato Council v. United States*, 613 F. Supp. 1237, 1244 (Ct. Int'l Trade 1985)).

In *American Flange Producers*, the CIT considered a respondent's allegation that "Commerce was under a duty to undertake additional inquiry" into a party's claims and its attempt to fault the agency for failing to "request{} any additional explanation or information from {the party} regarding its claims or the information upon which it relied." *Id.* at 1356-57. The court found that although Commerce must make a "diligent inquiry" into certain allegations made on the record, "the burden on the parties to develop the record comes first in time" and therefore the agency "has no independent duty to make a diligent inquiry into any and all information highlighted by interested parties." *Id.* at 1357. Instead, it was the respondent's burden to "furnish some proof" to Commerce concerning its allegation. *Id.* Indeed, "{a} requirement that Commerce must search out new information…is really a mandate that

Commerce must shoulder any burden that the plaintiffs choose not to meet." *Tianjin Machinery Import & Export Corp v. United States*, 806 F. Supp. 1008 (Ct. Int'l Trade 1992).[4] That is exactly the essence of Tenaris's claim: an attempt to recruit Commerce into attacking a record that Tenaris itself declined to build.

Commerce – and the CIT – repeatedly noted Tenaris's failure to provide the agency with any evidence that could undermine the data provided in the Petitions. Commerce found that "{n}o party submitted any evidence or argument to detract from {Petitioners'} well-established industry source as the reasonable starting point for the denominator of the industry support calculation" and that Tenaris "has not provided any production data…to include in the industry support calculation" or provided "a more appropriate, reasonably available source for industry-

---

[4] Tenaris cites *Qingdao Taifa Group Co. v. United States*, 710 F. Supp. 2d 1352 (Ct. Int'l Trade 2010) for the proposition that "in some circumstances Commerce may have to perform an independent investigation of the facts…" Indeed, as the remainder of the quote makes clear, the court's finding was specific to "the facts related to the question of government control" in the context of a separate rate determination after Commerce makes a preliminary finding of absence of government control. Tenaris cites no authority from the industry support context because that is not the applicable standard.

wide shipment or production data{.}" Remand Redetermination at 12, Appx032; *Initiation Checklist*, Attachment II at 7 n.48, Appx135. Likewise, in *Tenaris I*, the CIT determined that "{p}laintiffs did not offer their own production data to undermine Commerce's reliance on shipment data, nor did they challenge the authoritative basis from which selected shipment data was derived." *Tenaris I*, 693 F. Supp. 3d at 1323, Appx063-64. Rather than contest these findings, Tenaris concedes them, arguing that it was in fact *Commerce's* duty to request information from *Tenaris*. Pl. Br. at 27. But Tenaris may not offload its burden to build the record and rebut Defendant-Appellees' well-founded evidence onto Commerce. As the below makes clear, Commerce reasonably considered the record before it and its determination of industry support was supported by substantial evidence – the only standard that is applicable to Commerce's determinations.

## B. Commerce Reasonably Determined that the Petitions' Shipment Data Were Reliable

19 U.S.C. § 1673a(b)(1) provides that antidumping petitions will be based on "information reasonably available to the petitioner{.}" Here, Defendants-Appellees submitted reasonably available information showing sufficient domestic industry support. In the absence of published

production data for the entire domestic OCTG industry, Defendants-Appellees provided production data for their own facilities and shipment data from a reputable, well-established industry source – the [

Industry Source     ] – for facilities not under their control. *See* Petitions, Volume I at 5-6, Appx239-40. Defendants-Appellees adopted this approach because actual production data for other domestic producers was not reasonably available to Defendants-Appellees and because Commerce has in numerous proceedings accepted such shipment data as a proxy for otherwise unavailable production data. *See e.g.*, *Mattresses from Indonesia: Initiation of Countervailing Duty Investigation*, 88 Fed. Reg. 57,412 (Dep't Commerce Aug. 18, 2023). Further, Commerce had previously relied on data from the [          Industry Source          ] in OCTG proceedings. *See* Notice of Implementation of Section 129 of the Uruguay Round Agreements Act; Antidumping Measures Concerning Oil Country Tubular Goods from Argentina, 71 Fed. Reg. 19,873 (Dep't Commerce Apr. 18, 2006) and accompanying Issues and Decision Memorandum.

Commerce subsequently requested and allowed certain revisions to the Petitions, and accepted information from other interested parties including Tenaris, consistent with 19 U.S.C. §§ 1671a(b)(1) and

1673a(b)(1). In particular, Commerce asked Defendants-Appellees about the completeness of the [ Industry Source ] data, and Defendants-Appellees responded by placing evidence on the record that the [ Industry Source ] is the largest market intelligence database on steel pipe and tube in the world, maintains information on the complete supply chain, and is the premier industry resource for pipe and tube statistics. *See* Petitioners' Response to General Issues Questionnaire (Oct. 12, 2021) at 4-5 and Exhibit 6, Appx1092-93, Appx1148. Defendants-Appellees also provided record evidence that the shipment data were probative because the difference between shipments and production in the three most recent calendar years was very [amount]. *Id.* at 3-4, Appx1091-92.

As stated above, Tenaris did not place any evidence on the record to refute or undermine Defendants-Appellees' data source. Rather, Tenaris made the strategic choice to present a binary call for Commerce's consideration—either poll the industry directly or reject the Petitions. *See* Tenaris Oct. 15 Comments at 7, Appx1448. Consequently, at the end of the 20-day pre-initiation period, the administrative record contained data that Commerce in its discretion deemed reliable enough to

demonstrate that the Petitions were supported by more than half of domestic production expressing an opinion on the Petitions. As the Remand Redetermination further explained,

> {T}he record supports Commerce's conclusion that the shipment data from this source account for all domestic shipments of the domestic like product (including the appropriate green tube finishing operations) and that, after accounting for the domestic industry's export shipments derived from reasonably available information (including industry-wide data from the ITC's India et al. OCTG 2020 Review), the resulting denominator used in the industry support calculation appropriately reflects the entire universe of production of the domestic like product in calendar year 2020.

Remand Redetermination at 12, Appx032.

Commerce further concluded that, "{g}iven the relatively low threshold for establishing industry support and the reliable record evidence showing that the petitioners" satisfied the statutory standard for industry support, "the burden was on Tenaris USA to submit adequate, rebuttal factual information in the pre-initiation period showing that the industry source used by the petitioners as the starting

point for their estimate of the 2020 industry-wide production data was incorrect." *Id.* at 22, Appx042.[5]

Instead of meeting its burden before the agency, Tenaris now attempts to have this Court simply downgrade the weight that Commerce attached to Defendant-Appellees' evidence. *See* Pl. Br. at 18 ("{T}he proxy shipment information…did not provide a reliable basis for Commerce to determine whether the petition satisfied the statutory industry support thresholds{.}") and 33 ("Commerce merely accepted the claim of the Petitioners that the information was complete…"). However, such determinations concerning the credibility of evidence go to the core of Commerce's discretion in antidumping investigations. *See Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1359 (Fed. Cir. 2006) ("{W}hen the totality of the evidence does not illuminate a black-and-white answer to a disputed issue, it is the role of the expert factfinder…to decide which

---

[5] Commerce further noted that "Tenaris USA's burden to show lack of industry support was arguably higher in a case such as this one, where evidence in the Petition demonstrated that even if all other domestic producers (including Tenaris USA) were to oppose the Petition, the supporters still had the requisite level of industry support for Commerce to initiate the investigation." Remand Redetermination at 22 n.90, Appx042.

side's evidence to believe."). This discretion is specifically codified at 19 U.S.C. §1673a(c)(4)(D), which permits Commerce to establish industry support by polling the industry *or* by "rely{ing} on other information." Further, Commerce did not merely "accept the claim" of Defendants-Appellees on faith – it assessed evidence that Defendants-Appellees placed on the record in support of the [          Industry Source          ] reliability. *See* Petitioners' First Questionnaire Response at 3-5 and Exhibit 6, Appx1091-93, Appx1148. Tenaris simply failed to give Commerce any reason to make a different determination.

Tenaris's sole substantive argument regarding the reliability of the proxy shipment data is factually inaccurate. In its remand comments, Tenaris attempted to claim that the [          Industry Source          ] data were incomplete because they [ alleged Industry Source shipment counting methodology ]. *See* Tenaris Comments on Commerce's Final Remand Determination (July 26, 2024) at 13-14, Appx2071-72. For support, Tenaris pointed to the [     Industry Source     ] table that formed the starting point for Defendants-Appellees' industry support denominator and claimed that the table was accompanied by a [ Description of Industry Source contents ] stating [ alleged Industry Source shipment counting methodology ]

]"

*Id.* at 15, Appx2073. From this, Tenaris concluded that the shipment data

[   alleged Industry Source shipment counting methodology    ]. Tenaris now reprises

this argument before this Court. *See* Pl. Br. at 34-35.

Tenaris's argument demonstrates significant chutzpah, for two reasons. First, Tenaris had previously argued the opposite, *viz.*, that Commerce should *exclude* U.S. processor volumes from the industry support calculation. *See* Tenaris Oct. 15 Comments at 9, Appx1450. Second, and more substantively, Commerce already considered and rejected Tenaris's argument:

> We reexamined the record with respect to this exhibit and found that [   Description of Industry Source methodology
>
> ]. The petitioners [
>
> Description of industry support calculation methodology
>
> ].
> Tenaris attempts to muddy the water again and cast doubt on data that up until this point had remained uncontested on the record.

Remand Redetermination at 21, Appx041. Remarkably, Tenaris did not even bother to address Commerce's refutation of its claim, repeating it before this Court as if Commerce had not already spoken.[6]

Tenaris made a similar argument regarding the 2018-2019 ITC data that Commerce used to adjust the 2020 shipment data. Tenaris argued that these data were flawed because they only represented shipments and production from U.S. mills and did not include processors. Pl. Br. at 40. As an initial matter, this argument was waived before the CIT, as Tenaris only challenged the 2018-2019 data as "out-of-date and unrepresentative for non-petitioners." Tenaris CIT Opening Br. at 25-26, Appx1840-41; *see also* Tenaris CIT Reply Br. at 9, Appx1947 (summarizing three "problems"). Tenaris made no mention of processors' data being excluded from the 2018-2019 data, *see* Tenaris CIT Opening Br., and elsewhere criticized Commerce's supposed "fail{ure} to ensure that *including* the production data of finishers/processors…was

---

[6] Given that Tenaris had every opportunity to address Commerce's previously expressed rationale, any further rejoinder that it might raise in reply papers should be considered waived. *See, e.g.*, *Corus Staal BV v. United States*, 502 F.3d 1370, 1378 (Fed. Cir. 2007) ("Corus did not raise that argument in its opening brief, however, and we therefore treat that argument as waived.").

appropriate," *id.* at 27, Appx1842 (emphasis supplied). This Court should decline to consider Tenaris' new, opposite argument for the first time on appeal. *See Golden Bridge*, 527 F.3d at 1323 ("new arguments will not be decided in the first instance on appeal").

Substantively, Tenaris's argument fails because it depends upon the word "mill" exclusively referring to production and excluding processing. In fact, there is no warrant for this position. Facilities with the ability to produce and process OCTG are referred to as "mills." *See, e.g.*, Petitions, Volume I at 15, Appx249 (quoting Exhibit I-11, USITC Pub. 5090 at I-30, Appx361).

Because Commerce convincingly rejected Tenaris's attempt to "muddy the water" with spurious claims about the [ Industry Source

] data, Tenaris is left with arguments that are entirely speculative and, for the most part, waived (as will be shown below at Section IV). For example, Tenaris asserts that Defendants-Appellees' shipment data are not reliable because the industry support calculation "may not have properly distinguished between OCTG production and mere threading that does not qualify as production." Pl. Br. at 46. Commerce noted that when Tenaris debuted this argument in its remand comments, Tenaris

"point{ed} to information that was not on the record before Commerce at the time of initiation or currently before Commerce." Remand Redetermination at 20, Appx040. More substantively, Tenaris fails to identify any record evidence demonstrating that the industry support calculation counts minor processing as production of the domestic like product. Tenaris's mere speculation regarding the potential inclusion of minor processing does not constitute evidence of any actual distortion in the industry support calculations. *See* Remand Redetermination at 22, Appx042.; *see also NSK Ltd. v. United States*, 190 F.3d 1321, 1328 (Fed. Cir. 2003); *Timken v. United States*, 240 F. Supp. 2d 1228, 1236 (Ct. Int'l Trade 2002). In fact, the record points in the opposite direction. Commerce cited record evidence, specifically the ITC's then-most-recent OCTG publication, for the proposition that U.S. mills perform minor processing *in addition* to heat treatment. *See* Remand Redetermination at 16 n.65 and 17 n.71, Appx036, Appx037. The governing standard of review provides no basis for entertaining Tenaris's demand that Commerce prove a wholly speculative negative – *i.e.*, that the industry support data do not include minor processing. This Court should reject

Tenaris's improper attempt to assign Commerce the burden of proof to rebut Defendants-Appellees' evidence.

The proxy shipment data placed on the record by Defendants-Appellees thus remain undisturbed, and Commerce's determination that these data were credible is reasonable and supported by substantial evidence.

### C. Commerce Reasonably Considered, and Rejected, the Inference of Double Counting

The CIT remanded Commerce's determination to address one issue: whether industry support for the Petitions satisfied the statutory minimum for initiation in light of "record evidence indicating that certain domestic companies both produce and finish OCTG, leading to the inference that some domestic pipe may have been double counted in the industry support calculations." *Tenaris I*, 693 F. Supp. 3d at 1326, Appx070. "Commerce may have reasons to reject this inference, however, it must acknowledge consideration of such evidence and explain why it nonetheless rejects the inference." *Id.*, Appx071.

In accordance with the CIT's instructions, Commerce reexamined all filings submitted to the record during the 20-day pre-initiation period and further explained its conclusion that Defendants-Appellees had

provided reasonably available industry support data that accurately reflected domestic OCTG production in calendar year 2020 and did not improperly double count production by domestic producers and processors. Commerce began its analysis by noting that Tenaris had not raised any concerns with "double counting" that distorted the level of support in the calculation in any of its four pre-initiation filings to the agency. Remand Redetermination at 5, Appx025. Rather, Tenaris had argued in those filings that processing operations in their entirety should be *excluded* from the industry support calculations – an obvious about-face from the position Tenaris now takes. *See id.* at 5-7, Appx025-27. Notably, Tenaris's brief before this Court concedes the issue, noting that the CIT had remanded on double counting "despite the absence of any reference by Tenaris to the specific distortion of 'double-counting' on the record before Commerce{.}" Pl. Br. at 58.

Nonetheless, Commerce further explained its industry support finding to address the CIT's specific concerns with potential double counting of finishing operations. Commerce explained that the inclusion of data for finishing operations ensures that the industry support calculations account for total production of the domestic like product and

that concerns regarding alleged double counting were misplaced for several reasons. First, nothing on the record suggests that domestic producers engaged in both production and processing counted each pipe they produced twice or that domestic processors counted their heat treatment as production when the green tube was manufactured by another domestic producer. Remand Redetermination at 13, Appx033. Second, the inclusion of green tube finishing operations does not overstate support in the numerator because such production is included in both the numerator *and* the denominator. *Id.* at 13-14 and n.57, Appx033-34. This means that the "inclusion of green tube finishing or processing operations, in addition to OCTG production, results in a larger denominator, which yields a more conservative calculation of industry support{.}" *Id.* at 13, Appx033. Third, the record evidence showed that Defendants-Appellees PTC Liberty and Borusan operate facilities that primarily produce OCTG and that are equipped to finish the OCTG that they produce themselves, rather than OCTG produced by a separate entity. *Id.* at 14-16, Appx034-36.

In *Tenaris I*, the CIT reasoned that Commerce needed to address certain record evidence that *could* lead to an inference that OCTG may

have been double counted in the industry support calculations. *See Tenaris I*, 693 F. Supp. 3d at 1326-28, Appx070-73. The CIT referenced the only two relevant pieces of record evidence that Tenaris had supplied:[7] printouts of select pages from PTC Liberty's and Borusan's websites indicating that each company both produces and finishes OCTG; and an ITC publication that did not identify PTC Liberty among domestic OCTG producers during the then-most-recent sunset review, conceivably suggesting that PTC Liberty only finishes OCTG. *Id.* at 1326-27, Appx070-71.

However, the CIT was careful not to compel Commerce to adopt such an inference. This is because it is within Commerce's discretion as the fact-finder to assign greater or lesser weight to record evidence. *See U.S. Steel Grp. V. United States*, 96 F.3d 1352, 1357 (Fed. Cir. 1996); *Usinor Sacilor v. United States*, 893 F. Supp. 1112, 1123 (Ct. Int'l Trade 1995) (citing *Negev Phosphates, Ltd. v. United States*, 699 F. Supp. 938,

---

[7] Tenaris, however, did not supply this evidence in the context of double counting. Rather, in the context of its since-abandoned effort to exclude finishing operations from the scope of the domestic industry, it pointed to this evidence and explained that "it is unclear what portion…of operations involves actual pipe production, as opposed to finishing operations." *See* Tenaris Oct. 15 Comments 10, Appx1451.

953 (Ct. Int'l Trade 1988)). Commerce is also entitled to draw reasonable inferences from the record. *See Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984). Under the standard of review, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966). Here, while the CIT observed that it might be reasonable to infer from the record that the industry support calculations could double count production if domestic processors finished pipe manufactured by a different domestic producer, the CIT also acknowledged that "Commerce may have reasons to reject this inference." *Tenaris I*, 693 F. Supp. 3d at 1327, Appx071.

After reexamining the record evidence on remand, Commerce rejected the theoretical double counting inference. *See* Remand Redetermination at 14-16, Appx034-36. Instead, Commerce found that the record reasonably supported the inference that PTC Liberty and Borusan are each OCTG producers and discerned nothing in the record to compel the conclusion that they double counted their production

simply because their facilities are also equipped to finish the OCTG they produce.

Commerce found that PTC Liberty's and Borusan's websites showed that each primarily produces OCTG at their respective U.S. facilities. *See id.* at 15-16, Appx035-36. PTC Liberty's website states that it "produces highly engineered OCTG and operates two production facilities focused on OCTG production." *Id.* at 15, Appx035. While PTC Liberty's production facilities are also equipped to process and finish OCTG, nothing in these materials indicates that PTC Liberty heat treated green tube that was manufactured by a different domestic producer and then double counted that processing as production in calendar year 2020. If anything, the fact that PTC Liberty's Houston facility is used "to process overflow production from {PTC Liberty's} Liberty, Texas plant" indicates that PTC Liberty produces and finishes its own OCTG. Tenaris Oct. 15 Comments at Exhibit 6, Appx1497. As Commerce explained, that "a company produces OCTG and has processing capabilities does not mean that it double counted its OCTG production…nor does it follow that the data from these companies must be inherently flawed." Remand Redetermination at 13, Appx033.

Similarly, Borusan's website states that it "produces OCTG casing in a variety of sizes, weights and grades" at its Baytown, Texas facility with an annual production capacity of 300,000 tons. *Id.* at 16, Appx036. Borusan's website also states that it processes and finishes OCTG at the same facility; however, the green tube is imported from Borusan's Gemlik facility in Türkiye and is not sourced from another domestic producer. *Id.* The fact that Borusan heat treats *imported* green tube eliminates the potential for double counting because, as recognized by the CIT in *Tenaris I*, the only scenario in which domestic OCTG production could theoretically be counted twice is if a domestic processor heat treats green tube sourced from a different domestic producer. *Id.* at 13, Appx033.

Finally, Commerce confirmed that the ITC's then-most-recent sunset review further supports the understanding that PTC Liberty is a domestic OCTG producer. *Id.* at 14-15, Appx034-35. Commerce found that PTC Liberty operates assets previously owned by Boomerang Tube, which the ITC had listed as a domestic OCTG producer. *Id.* at 15, Appx035. The Liberty, Texas and Houston, Texas production facilities attributed to Boomerang Tube in the ITC's sunset review match the

production facilities listed in the "Our Facilities" section of PTC Liberty's company website. *See* Tenaris Oct. 15 Comments at Exhibit 6, Appx1497.

As instructed by the CIT, Commerce reexamined the evidence on the record regarding PTC Liberty and Borusan (*i.e.*, the only information cited by Tenaris to support its double counting claim) and drew the reasonable inference that PTC Liberty and Borusan did not double count their production and processing of OCTG. Therefore, Commerce concluded that the industry support calculation accurately reflected industry support for the petition.

Tenaris's arguments to the contrary miss the mark. First, Tenaris claims that it did not matter if double-counted pipe in the numerator was also included in the denominator, because "{t}he relationship *between* the numerator and denominator of the industry support ratio is not the issue on which the CIT remanded." Pl. Br. at 42 (emphasis in original). Rather, "Commerce's statement that the inclusion of the same pipe in the numerator and denominator would be 'canceled out' would be correct *only if the ratio were 1:1* – that is, were the numerator and denominator the same, which they clearly are not." *Id.* at 43 (emphasis in original).

However, Commerce's approach is well-founded. For the purposes of establishing a ratio of industry support under the statute, double counting only distorts industry support if it enlarges the numerator without also enlarging the denominator by an equivalent amount. Commerce explained that the inclusion of green tube processing in both the numerator and the denominator appropriately balanced both sides of the equation, illustrating this principle with a mathematical formula. *See* Remand Redetermination at 14, n.57, Appx034.[8] Further, by defining the domestic like product to include both finished and unfinished OCTG, and the industry to include both OCTG producers and processers/finishers of

_____

[8] Tenaris's own mathematical example is misleading. *See* Pl. Br. at 43. It relies on the unsupported assumption that only petition supporters had processing-based OCTG production. A far more reasonable and evidence-based assumption is that non-petitioner processors accounted for some additional production of the domestic like product, given that "{p}rocessors…mainly serve imports." Petitions, Volume I at 16, Appx250 (quoting USITC Pub. 5090 at I-30). Mathematically expressed, adding two tons of OCTG to the numerator to account for supporting OCTG processors and three tons of OCTG to the denominator to account for both petition *and* non-petitioning OCTG processors would transform a "9/10" (90%) ratio to a lower "11/13" (84.6%) ratio. Regardless, Commerce was required by statute to include domestic like product production – which includes heat treatment OCTG processing – in the industry support calculations. Excluding such production was never a lawful option.

green tube, Commerce ensured that the denominator "appropriately reflects the entire universe of production of the domestic like product in calendar year 2020" and therefore produces the most conservative measure of industry support possible, because the numerator by definition could not include any more double-counted OCTG than the denominator. Remand Redetermination at 12, 13, Appx032, Appx033. Commerce's understanding is, at the bare minimum, reasonable.

Second, Tenaris claims that Commerce erred by focusing its analysis on evidence related to PTC Liberty and Borusan, writing that "{t}he issue remanded by the CIT was applicable to all U.S. producers/processors," and that at any rate, "it was impossible for Commerce to undertake the required analysis for PTC, Borusan, or any other processors based on the record in the underlying investigation" because "the record does not disaggregate the producers' (pipe formation) and processors' (heat treatment pipe finishing…) data such that it is possible to…ensure there is no double-counting." Pl. Br. at 43-44.

However, Commerce focused mainly on PTC Liberty and Borusan because the record materials discussed in and relevant to the *Tenaris I* remand order are limited to those two companies. *See* Remand

Redetermination at 17 and 19-20, Appx037, Appx039-40; *see also* Tenaris Oct. 15 Comments at Exhibit 5 and Exhibit 6, Appx1491, Appx1496. Regardless, Commerce's discussion of the double counting issue was not in fact limited to PTC Liberty and Borusan. As the above makes clear, Commerce discussed double counting in broad terms and from first principles that are "applicable to all U.S. producers/processors." *See* Remand Redetermination at 12-14, Appx032-34; Pl. Br. at 43. Further, Commerce was not obligated to "ensure" there is "no" double counting because perfection is not the applicable standard, nor what the *Tenaris I* required, only a reasonable consideration of record evidence. *See PT Pindo Deli Pulp*, 825 F. Supp. 2d at 1327-28. This is especially true where Tenaris fails to present record evidence that *any* double counting occurred at all.

Tenaris goes so far as to claim that Commerce's aggregation of producer and processor data constituted a violation of the antidumping statute by "fail{ing} to give any meaning to the terms 'industry' and 'production' in the statute{.}" Pl. Br. at 32. However, nothing resembling the statutory argument now set forth at pages 28 to 32 of Tenaris' opening brief before this Court appeared in Tenaris' arguments before

the CIT. Tenaris' CIT papers never even cited the definition section of the antidumping statute, whereas 19 U.S.C. § 1677(4) now forms the foundation of Tenaris' appellate position. *See* Pl. Br. at 29. This new position is not eligible for consideration. *See Golden Bridge*, 527 F.3d at 1323 ("new arguments will not be decided in the first instance on appeal").

Regardless, Commerce already explained that the record supported defining the domestic like product to include all OCTG, whether finished or unfinished (including green tube), and that accordingly the domestic industry is comprised of both domestic OCTG producers and processors/finishers of green tube that provide heat treatment. *See* Remand Redetermination at 7-10, Appx027-30. Hence, Commerce explicitly defined, and gave meaning, to the "industry" and "production" at issue in this case. Those definitions are consistent with Commerce's decisions in other cases and prior ITC determinations involving OCTG that date back to at least 2014. *See* Remand Redetermination at 10, Appx030.

## III. Commerce Complied with the CIT's Remand Order

In contending that Commerce failed to comply with the CIT's remand order, Tenaris finds itself in the awkward position of arguing that it knows better than the court *what that very court said. See, e.g.,* Pl. Br. at 17 ("The CIT…interpreted its remand instructions in exceedingly narrow terms{.}"). Tenaris believes that the CIT's remand order required Commerce to "look beyond simply double-counting concerns" and address, generally, "{w}hether the data relied upon accurately reflected industry support{.}" Pl. Br. at 46, 48. However, there is no better authority on the meaning of a court order than the author of that order. Thus, this Court will not disturb a lower court's interpretation of its own order "unless the interpretation is unreasonable or is otherwise an abuse of discretion." *Amado*, 517 F.3d at 1358. Here, the CIT's interpretation of its prior remand order in *Tenaris II* is well supported.

In *Tenaris II*, the CIT assessed Tenaris's argument that Commerce had failed to comply with the remand order in *Tenaris I*. The CIT disagreed with Tenaris about the interpretation of the CIT's own words, finding that "the Court did not order Commerce to confirm the completeness or the accuracy of the shipment data….Thus, Commerce's

industry support determination is reasonable, supported by substantial evidence, and therefore sustained." *Tenaris II*, 745 F. Supp. 3d at 1345, Appx020.

It is true that the concluding text of the CIT's remand order contains two clauses. *See Tenaris I*, 693 F. Supp. 3d at 1328, Appx073 ("Commerce's determination that the data relied upon accurately reflected industry support, including whether finishing operations were counted twice, is remanded for further explanation or reconsideration."). Tenaris treats the first clause of the sentence as a stand-alone, universal command to review all aspects of Commerce's industry support determination. *See* Pl. Br. at 47-48 ("The remand instructions are clear that Commerce was required to look beyond double-counting to determine whether the data relied upon accurately reflected industry support.").

But Tenaris's understanding cannot be correct. The CIT reviewed, and rejected, all of Tenaris's claims concerning the accuracy of the industry support data with the sole exception of double counting. In addition to rejecting Tenaris's claim that Commerce was required to poll the industry, the CIT rejected Tenaris's argument that Commerce was

required to extend the 20-day initiation deadline and upheld Commerce's use of alternative data that adjusted 2020 shipment data with data from 2018 and 2019 – over Tenaris's objection that Commerce was limited to the preceding twelve-month period and that the 2020 data were "anomalous." *See id.* at 1320, 1323-24, Appx050, Appx056-57.

Indeed, in every other iteration of the CIT's remand order, only double counting is mentioned. *See, e.g.*, *Tenaris I*, 693 F. Supp 3d at 1326, Appx069 ("Because Commerce did not adequately address Plaintiffs' concerns and record evidence that finishing operations were not counted twice, the Court remands this issue for further explanation or reconsideration."); 1328, Appx073 ("Commerce fails to respond to record evidence suggesting the possibility of double counting within the industry support calculations, and therefore the Court cannot conclude that Commerce's determination is supported by substantial evidence…Accordingly, the Court remands determination on the double counting issue to Commerce for further explanation or reconsideration.") When read as a whole, it is clear that the opinion found fault only with Commerce's treatment of the double counting issue. It is unreasonable to suppose that the CIT radically revised the entirety of its preceding

opinion with a single concluding clause. By ruling that Commerce had in fact complied with its remand order, the CIT confirmed that that was not its intention, and that Commerce accurately understood the remand order to solely require a reconsideration of the double counting issue. This interpretation was reasonable and well supported by the text of *Tenaris I.*

## IV. Tenaris Failed to Exhaust its Remaining Arguments

Consistent with the mandate of the U.S. Court of International Trade's governing statute, a party seeking judicial review must show that it first exhausted its administrative remedies, or that it qualifies for an exception to the exhaustion doctrine (such as the "futility" exception or the "pure question of law" exception). *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1003 (Fed. Cir. 2003); *see also* 28 U.S.C. § 2637(d). The CIT "enjoys discretion to identify circumstances where exhaustion of administrative remedies does not apply." *Consol. Bearings*, 348 F.3d at 1003.

Here, the CIT found that Tenaris failed to exhaust its administrative remedies because it introduced two new arguments during the court proceeding that it had not previously raised before the

agency. "Specifically, Plaintiffs theorize that the incompleteness of the Industry Source led to undercounting and improper comingling of OCTG producers and processors, distorting Commerce's calculations." *Tenaris II*, 745 F. Supp. 3d 1336, Appx014. Tenaris's sole substantive defense is that Commerce had, in essence, been placed on constructive notice of these claims, because Tenaris had argued more generally that Commerce should (1) "use actual production data" instead of "unreasonable proxy data" and (2) "that the composition of the domestic industry and the Petitioners had implications for the accuracy of the industry support calculation." Pl. Br. at 54. However, broad statements that simply raise the possibility of generic issues do not constitute exhaustion of more specific arguments. *See Luoyang Bearing Corp. v. United States*, 347 F. Supp. 2d 1326, 1352 (Ct. Int'l Trade 2004) ("{A} plaintiff cannot circumvent the requirements of the doctrine of exhaustion by merely mentioning a broad issue without raising a particular argument…"); *Navneet Education Ltd. v. United States*, 2023 WL 9018387 at *12 (Ct. Int'l Trade 2023) ("Three sentences of vague allegations of distortion represent a far different claim from two full pages of argument laying out with specificity multiple alleged failures.").

Surprisingly, Tenaris attempts to argue that Commerce was put on notice regarding undercounting and comingling of producer and processor data because the CIT, in *Tenaris I*, remanded for reconsideration of the double counting issue "despite the absence of any reference by Tenaris to the specific distortion of 'double-counting' on the record before Commerce{.}" Pl. Br. at 58. Therefore, Tenaris infers, Commerce was alert to the "many potential distortions to the industry support calculations that arise{} because of the composition of the Petitioners and the domestic industry{.}" *Id.* This should make the Court skeptical as to whether Tenaris exhausted its arguments with regard to double counting, rather than extending the break that the CIT cut Tenaris on one issue to a broad range of new issues that could arguably fit under the general theme of "distortions."

Tenaris's last Hail Mary is that requiring exhaustion would be inequitable. Pl. Br. at 59. Yet equity "aids the vigilant, not those who slumber on their rights," *Cornetta v. United States*, 851 F.2d 1327, 1375 (Fed. Cir. 1988), and is thus ill-suited to overcome a rule such as exhaustion. Tenaris has had every opportunity to raise the arguments it belatedly proffers, but has instead repeatedly chosen to "move the needle

and fine tune" those arguments, or even reverse its prior positions, as they fail to find the mark with both Commerce and the CIT. Remand Redetermination at 20, Appx040. Congress provided Commerce with a 20-day statutory period in which to analyze the record and make the required determinations vis-à-vis initiation. The inequity would be to allow Tenaris two-and-a-half years after the issuance of an antidumping duty order to iterate *post hoc* challenges to Commerce's determinations. This Court should not permit Tenaris to reinvent its case, yet again, on appeal.

## <u>CONCLUSION</u>

For the foregoing reasons, Commerce's Remand Redetermination was supported by substantial evidence and in accordance with law, and the CIT properly sustained it. Accordingly, Defendants-Appellees respectfully request that the Court affirm the CIT's judgment.

Respectfully submitted,

/s/ Thomas M. Beline
Thomas M. Beline
Myles S. Getlan
James E. Ransdell
CASSIDY LEVY KENT (USA) LLP
900 19th Street NW
Suite 400
Washington, DC 20006

*Counsel to United States Steel Corporation*

/s/ Christopher T. Cloutier
Roger B. Schagrin
Christopher T. Cloutier
Nicholas C. Phillips*
SCHAGRIN ASSOCIATES
900 Seventh Street, NW,
Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel to Borusan Mannesmann Pipe U.S. Inc.; PTC Liberty Tubulars LLC; United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC; and Welded Tube USA Inc.*

*Only admitted in New York. Practice limited to federal courts and agencies.

Date: May 5, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 2025-1382

**Short Case Caption:** Tenaris Bay City, Inc. et al. v. United States

---

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

---

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  12,750  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 05/05/2025

Signature: /s/ Christopher T. Cloutier

Name: Christopher T. Cloutier

Save for Filing

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 2024-1382

**Short Case Caption:** Tenaris Bay City, Inc. et al. v. United States

---

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).

- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

---

The foregoing document contains ___50___ number of unique words (including numbers) marked confidential.

☐ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☑ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 05/05/2025

Signature: /s/ Christopher T. Cloutier

Name: Christopher T. Cloutier

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number** 2025-1382

**Short Case Caption** Tenaris Bay City, Inc. v. United States

---

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

---

I certify that I served a copy of the foregoing filing on ___05/05/2025___

by ☐ U.S. Mail ☐ Hand Delivery ☐ Email ☐ Facsimile
☑ Other: _Secure File Transfer Protocol_

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Gregory J. Spak | gspak@whitecase.com |
| Kara Westercamp | kara.m.westercamp@usdoj.gov |
| | |
| | |
| | |

☐ Additional pages attached.

Date: _05/05/2025_

Signature: _/s/ Christopher T. Cloutier_

Name: _Christopher T. Cloutier_